United States District Court
District of South Carolina

| | | |
|---|---|---|
| William Eugene Webb, #19695-057; | ) | C/A No. 0:05-0728-HFF-BM |
| | ) | |
| Plaintiff; | ) | |
| | ) | |
| vs. | ) | **Report and Recommendation** |
| | ) | |
| Matthew B. Hamidullah, Warden; Dennis Hendershot, | ) | |
| Warden of Programs; and Katheryn Mack, Supervisor of | ) | |
| Education; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The Plaintiff, William Eugene Webb (hereafter, the "Plaintiff"), is a prison inmate in the custody of the Federal Bureau of Prisons (FBOP) bringing a *pro se* action against the named Defendants. This action was originally referred to the undersigned on March 16, 2005, for initial screening pursuant to 28 U.S.C. § 1915A. Following review of the Complaint and an attached memorandum entitled "Plaintiff's Brief in Support of Bivens Action under Title 28 U.S.C. § 1331" [Docket Entry #1-2], the undersigned concluded that Plaintiff sought to recover damages under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971).[1] On March 23, 2005, the undersigned filed a Report recommending summary dismissal because Plaintiff had failed to exhaust available administrative remedies.

---

[1] – In Bivens, the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. A Bivens claim is analogous to a claim under 42 U.S.C. § 1983: federal officials cannot be sued under 42 U.S.C. § 1983 because they do not act under color of *state* law. *See* Harlow v. Fitzgerald, 457 U.S. 800, 814-820 & n. 30 (1982).

1



Plaintiff filed objections to the Report in which he stated that his theory of recovery was ***not*** Bivens but the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 through § 2680: "Plaintiff avers that the [s]ole [sic] basis for his civil action is the tort claim filed under the Federal Tort Claims Act (FTCA) against the Defendants under TRT-SER-2004-04063." [Docket Entry #8, p. 4.] On October 7, 2005, the Honorable Henry F. Floyd, United States District Judge, filed an order recommitting this matter to the undersigned and noting that the plaintiff had changed his theory of recovery.

After this matter was recommitted to the undersigned, Plaintiff filed additional papers, including a "Motion to Amend/Correct Complaint" and a "Notice of Additional Exhausted Claims...." [Docket Entries #12 and #13.][2] As these filings left it unclear as to what claims Plaintiff was intending to assert or pursue, the undersigned entered an order on December 14, 2005, directing him to file an amended complaint that "should include all claims and causes of action Plaintiff intends to assert in this case." [Docket Entry #14.] On January 5, 2006, Plaintiff filed his Amended Complaint, thirty-two (32) pages in length, with an additional eighty-two (82) pages of attachments. [Docket Entries # 15-1 and # 15-2.]. In this Amended Complaint, Plaintiff seeks relief under both the FTCA and Bivens, and makes the following claim:

> ...Plaintiff, in summary, claims, that the Defendants, while "acting under color of law" did in wanton deliberate indifference denied him "access to the institution library" at FCI Estill, by erroneously and capriciously misinterpreting federal regulation, and the Bureau's own policies, over an extended period, prior to, and during his incarceration there-in to this present-date. That these acts of deprivation has caused Plaintiff compounding substantial loss and damages, and mental anguish, to which he hereby seeks equitable relief in an amount "not-to-exceed" the sum of $4,000,000 Dollars.

---

[2] – In this action, Plaintiff also filed an "Affidavit" with an additional one hundred sixteen (116) pages of attachments. [Docket Entry #11-2.] All but twelve (12) pages of this filing pertain to Webb v. Hammidullah, et al., 0:05-2546-HFF-BM (D.S.C. 2005) and are irrelevant to this action. The relevant pages had already been filed in this case. [Docket Entry #11-2, pp. 37-49.]

2



Amended Complaint, p. 12. See also, p. 2 ["Summary of the Case"].

As the Plaintiff is a *pro se* litigant, his pleadings are accorded liberal construction by this Court. Hughes v. Rowe, 449 U.S. 5 (1980); Estelle v. Gamble, 429 U.S. 97 (1976); Haines v. Kerner, 404 U.S. 519 (1972); Loe v. Armistead, 582 F. 2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F. 2d 1147 (4th 1978). Even under this less stringent standard, however, the undersigned concludes after review of Plaintiff's Amended Complaint that this case is still subject to summary dismissal. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Dep't of Social Sciences, 901 F. 2d 387 (4th Cir. 1990).

### BACKGROUND

Plaintiff is presently incarcerated at the Federal Correctional Institution in Estill, South Carolina (FCI-Estill). He was transferred to FCI-Estill on June 16, 2004. The record reflects that, two days later, Plaintiff complained that the Defendant Mack was denying him access to a typewriter to accomplish legal work or alternatively requiring him to purchase parts for the typewriter. On June 25, 2004, less than ten days after arriving at FCI-Estill, Plaintiff filed a standard form "Claim for Damage, Injury or Death" (SF-95) under the FTCA to which the FBOP assigned Tort Claim Number TRT-SER-2004-04063. [Docket Entry #1-2, pp. 43-47.] Plaintiff demanded Three Million Dollars ($3,000,000.00) for property damage and One Million Dollars ($1,000,000.00) for personal injury. The essential narrative of Plaintiff's SF-95 and attached brief is recited below verbatim:

> The Plaintiff does hereby file claims for damages as equitable relief against Katheryn Mack, Mr. Mack, the Warden, et. al [sic], acting under the color of law for acts of deliberate idifference [sic] against Plaintiff which violate federal laws and particularly the Bureau's own P.S. § 1315.7(c) thus causing Plaintiff undue hardship and cruel and unusual punishment upon his transfer to Estill from USP Leavenworth on or about 6/16/2004. In summary; [sic] beginning 6/18/2004 these officials did refuse to provide Plaintiff access to a typewriter for preparation of legal court documents by



>refusing to provide him with mechanical parts to the law library typewriter and further requiring that he must purchase these mechanical parts from the commissary in order to use any institutional typewriter.
>On or about June 18, 2004, at about 0800 hours the Supervisor of the Education Department, Katheryn Mack, did refuse Plaintiff access to a typewriter for preparation of imminent legal court documents, by refusing to provide him with all the mechanical components required to operate this machine, which did include a missing IBM WHEELWRITER TYPING RIBBON, an IBM CARTRIDGE POINTWEEL II, and an IBM ERASER RIBBON, which are all replaceable mechanical components to the typewriters, which IBM WHEELWRITER 1000 by Lexmark.  Mack futher [sic] informed Plaintiff he would be required to purchase these items from the inmate canteen at a price that exceeded $5.00, in order to use any law library typewriter.
>At about 0900 hours Plaintiff consulted his assigned Unit-Team-Counselor Mr. Mack, concerning this forestated [sic] matter, and Plaintiff's imminent need to prepare legal court documents, due to the Plaintiff's recent prolonged transfer to Estill, from USP Leavenworth, in the middle of pending and ongoing civil and criminal litigation within the courts, to-which [sic] he was currently required to come up-to-speed, or suffer considerable financial and other lost [sic].  Plaintiff did further show Mack documented proof of this fact.

[Docket Entry #1-2, pp. 43 and 45.][3]

The FBOP responded to Plaintiff's claim on November 3, 2004.  In part, Tami Rippon, Supervisory Attorney for the South Carolina Consolidated Legal Center, wrote:

>You claim beginning on or about June 18, 2004, staff at the Federal Correctional Institution (FCI) Estill have refused to provide you with mechanical parts to law library typewriter. You further claim that you have been informed you must purchase these parts from the Commissary in order to utilize any institutional typewriter.  You state this is infringing upon your right to access to the court.
>We have reviewed your claim along with reports from appropriate staff members. Our investigation has revealed on June 18, 2004, you requested the use of an electronic typewriter in the institution law library.  You were informed by Education Department staff that if you wanted to utilize the electronic typewriter you would have to purchase a printwheel and ribbon from the institution Commissary.  You were also informed if you could not afford to purchase a printwheel and ribbon, manual typewriters were available for use at no cost.
>There is no law or regulation that requires an institution to provide unfettered access to an electronic typewriter at no cost.  In addition, you were provided with the option

---

[3]It is noted that, although Plaintiff claims he was denied access to "any institutional typewriter," he typed the SF-95 entries and a three (3) page brief complete with legal citations within a week after the alleged incident. It must also be noted that, although Plaintiff now complains in his amended Complaint that the "Defendants has and continue to deny Plaintiff access to operable typewriters which are intact, and include a typing ribbon, eraser ribbon, and a cartridge point wheel," the amended Complaint (consisting of 32 pages) is itself a typed document.

4



>to utilize the manual typewriter at no cost and you chose not too [sic]. Therefore, any injury or loss you may have encountered was caused your own action.

[Docket Entry #1-2, pp. 48-49.]

Under 28 U.S.C. 2401(b), suits challenging administrative denials of FTCA claims must be filed within six months following final agency denial. Under Houston v. Lack, 487 U.S. 266 (1988), Plaintiff commenced this action on February 23, 2005. Plaintiff's claim for Four Million Dollars ($4,000,000.00) was, therefore, timely filed in this Court as an action under FTCA.

In his Amended Complaint, Plaintiff also now revives the Bivens claims which he expressly disavowed in his Objections to the Report filed by the undersigned on March 23, 2005. Plaintiff contends that he has renewed these claims because they are now administratively exhausted. The record presented to the Court reflects that, after filing his SF-95 for FTCA purposes, Plaintiff continued his dispute with Defendant Mack. In September, 2004, the dispute concerned scheduling conflicts between legal work and the Plaintiff's prison working hours. Plaintiff filed a "Request to Staff" (BP-8) on September 18, 2004, and received a written response on September 23, 2004. [Docket Entry #1-1, Exhibit F(2).] On October 7, 2004, Plaintiff wrote a letter to Defendant Hendershot concerning hours of the law library, and received a written response on October 18, 2004. [Docket Entry #1-1, Exhibit F(3).]

Through October and November, 2004, Plaintiff wrote additional letters and filed BP-8 forms concerning various aspects of the FCI-Estill law library and his perceived need for more time. He wrote to Defendant Hendershot seeking additional library access in order to file papers in a pending civil action. Webb v. Pendergrass, et al., 1:03-0315 (M.D. N.C. 2001). [Docket Entry #1-1, Exhibit F(3).] On November 1, 2004, the Plaintiff wrote a five page typewritten letter to Defendant Hammidullah. [Docket Entry #1-1, Exhibit F(1).]



On November 10, 2004, Plaintiff filed a "Request for Administrative Remedy" (BP-9) referring to his prior communications on September 16, October 12, 19 and 20, 2004. [Docket Entry #1-1, Exhibit I(3), Case Number 358882.] This request was denied by Defendant Hamidullah on December 23, 2004. [Docket Entry #1-1, Exhibit I(2).] On January 4, 2005, Plaintiff filed an "Administrative Remedy Appeal" (BP-10) with the FBOP Southeastern Regional Office (SERO). [Docket Entry #1-1, Exhibit I(1).] The SERO response, dated February 9, 2005, states that "it was determined staff responded favorably to your requests and therefore did not provide written documentation. Further information reflects provisions have been made for you to utilize the law library during your normal work hours." [Docket Entry #15-2, p. 55] The final FBOP Central Office denial in Case Number #35882 was sent to Plaintiff on July 14, 2005. [Docket Entry #13-2, p. 3].

## DISCUSSION

Plaintiff seeks to recover Four Million Dollars ($4,000,000.00) under either the FTCA or Bivens based on the Defendants' alleged denial to him of access to an electric typewriter, and denial of additional time in the prison law library. The FTCA waives sovereign immunity and allows suits against the United States for personal injuries caused by government employees acting within the scope of their employment. 28 U.S.C. § 1346(b). For FTCA purposes, Plaintiff's injury must have occurred during the week (June 18th to 25th) which passed between his initial experience of typewriter problems and the filing of TRT-SER-2004-04063. For Bivens purposes, the injury would have occurred sometime between June 2004 and the filing of this action (assuming administrative remedies had been pursued in good faith).

Nowhere in his filings does Plaintiff allege facts concerning any alleged physical injury received at FCI-Estill. Construed liberally, it may be that Plaintiff seeks monetary compensation for



frustration or other emotional distress experienced as result of his "legal work" allegedly being hindered. However, under 28 U.S.C. § 1346(b)(2), Plaintiff cannot recover monetary damages for mental or emotional injury without a prior showing of physical injury:

> No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

Therefore, any claim Plaintiff is asserting for personal injury is frivolous and should be summarily dismissed. See Cassidy v. Indiana Dept. of Corrections, 199 F.3d 374, 376 (7th Cir. 2000).

    Plaintiff also seeks monetary damages for alleged *legal* harm suffered due to the Defendants' conduct. Once again, however, Plaintiff supplies this Court with no factual allegations from which any monetary damages could be derived. Plaintiff does specifically allege that the Defendants' actions, by denying him adequate access to the prison law library, caused his pending action in North Carolina to be dismissed; see Plaintiff's Amended Complaint, at pp. 9-10; and it appears that Plaintiff did suffer dismissal of an action brought in the United States District Court for the Western District of North Carolina in which he sought to recover Three Million Dollars ($3,000,000.00) in damages for injuries sustained through the defendants' alleged deliberate indifference to a serious medical problem. See Webb v. Pendergrass, et al., 1:03-0315 (M.D. N.C. 2003).[4] However, Plaintiff's own filings with this Court (submitted as exhibits to his pleadings) show that he has no damage claim based on the dismissal of that case.

    The record reflects that Pendergrass was filed under the FTCA, but evolved into a combined § 1983 case against state officials and a Bivens action against a United States Marshal (who was

---

[4] – The docket for Webb v. Pendergrass, 1:03-cv-00513, is accessible at the Public Access to Court Electronic Records (PACER) website maintained by the United States District Court for the Middle District of North Carolina. See <https://ecf.ncmd.uscourts.gov>.



dismissed as a party defendant). In May, 2004, Plaintiff filed a motion to amend his complaint. When that motion was resisted, Plaintiff composed a "Traverse" to the opposition and a motion to allow late filing of this document because he had been in FBOP transfer status until June 16, 2004. The filing was allowed. See Webb v. Pendergrass, et al., supra, [Documents #20 through #22]. These documents were all typewritten on June 18, 2004 – the very day Plaintiff alleges that he was denied access to typewriters commencing at eight o'clock in the morning. On September 8, 2004, a motion for summary judgment was filed. Plaintiff sought and obtained an extension of time to respond until October 29, 2004, and then delivered another typewritten five-page "Affidavit" to the FCI-Estill mail room on October 25, 2004. Plaintiff also managed to assemble a substantial packet of documents to accompany this response that was so voluminous the papers were physically located in an expandable accordion folder and were not scanned. See Webb v. Pendergrass, et al., supra [Documents #40 and #41.] Additional replies and responsive briefs were filed by the parties in November and December, 2004, including Plaintiff's typewritten "Reply in Opposition" and a "Response in Objection". See Webb v. Pendergrass, et al., supra [Documents #42 through #48.] All of this "legal work" was accomplished at the very time when Plaintiff alleges he was being denied access to supplies and legal materials and/or was harassed by these Defendants.

On April 18, 2005, the Honorable Russell A. Eliason, United States Magistrate Judge, filed an order and recommendation for summary judgment. Webb v. Pendergrass, et al., supra [Document #49.] On June 2, 2005, the Honorable N. Carlton Tilley, United States District Judge, adopted the recommendation and dismissed the action. Plaintiff has appealed from the dismissal.

In sum, Plaintiff's own evidence and exhibits submitted as attachments to his case show that his case in the Middle District of North Carolina was thoroughly litigated. There is no evidence in



Plaintiff's own exhibits that any alleged misconduct by the present Defendants caused Plaintiff to suffer prejudice in that case, and his claim to have sustained monetary damages is therefore wholly unsupported by his own allegations and evidence.  Indeed, Webb v. Pendergrass, supra, has yet to even be concluded, since Plaintiff's appeal is still pending.  Hence, his "loss" (if any) from that case has not yet been realized, and apart from that one specific example, Plaintiff otherwise makes only the most general and conclusory claims that his alleged lack of access to the law library or legal assistance has resulted in any harm to him. Such general and conclusory claims, absent any factual support, are simply not sufficient to proceed with his claims in this Court. See Papasan v. Allain, 478 U.S. 265, 286 (1986)[Courts need not assume the truth of legal conclusions couched as factual allegations.]; Bender v. Suburban Hospital, Inc., 159 F.3d 186 (4th Cir. 1998); Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987)["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"].[5]

---

[5] Plaintiff also at one point in his Complaint makes a similarly general and conclusory claim that he has been denied equal protection of the laws. Complaint, at p. 16.  This conclusory allegation, with no factual support, is again not sufficient to present a viable claim. *Cf.* Buford v. Sutten, No. 04-959, 2005 WL 756092 at * 3 (W.D.Wis. Mar. 29, 2005)["An individual seeking relief on a claim of race discrimination under the equal protection clause must allege facts suggesting that a person of a different race would have been treated more favorably."](citing Jaffe v. Barber, 689 F.2d 640, 643 (7th Cir. 1982); Wilson v. Wigen, No. 96-0620, 1997 WL 158117 at * 3 (E.D.Pa. Mar. 31, 1997). See Chapman v. City of Detroit, 808 F.2d 459, 465 (6th Cir. 1986)["(Plaintiff's) conclusory allegations of...discrimination are not sufficient to establish liability."]; Jaffe v. Federal Reserve Bank of Chicago, 586 F.Supp. 106, 109 (N.D.Ill. 1984) [A plaintiff "cannot merely invoke his race in the course of the claim's narrative and automatically be entitled to pursue relief"]; May v. Baldwin, 895 F.Supp. 1398, 1410 (D.Or. 1995)["Though prison authorities may not discriminate against inmates on the basis of their race, plaintiff offers no evidence that he has been mistreated by prison officials because he is black."](internal citation omitted), aff'd, 109 F.3d 557 (9th Cir. 1997), cert. denied, 522 U.S. 921 (1997). Plaintiff's claim that his "due process" rights have been violated; see amended Complaint, at p. 15; is without merit for this same reason. See Papasan, 478 U.S. at 286; Bender, 159 F.3d at 186; Morgan, 829 F.2d at 12. Finally, Plaintiff also includes allegations in his amended Complaint about how the law library access policies have harmed other inmates.  However, Plaintiff cannot assert claims on behalf of other inmates.  Hummer v. Dalton, 657 F. 2d 621 (4th Cir. 1981) [A prisoner proceeding *pro se* may not serve as a "knight errant" for other inmates, but



9


To recover for denial of access to the courts, a prisoner plaintiff must demonstrate an actual injury resulting from the official conduct. See Strickler v. Waters, 989 F.2d 1375, 1382-1383 (4th Cir. 1993), cert. denied, 510 U.S. 949 (1993); Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987) ["Courts have required a showing by a complaining prisoner of actual injury or specific harm to him before a claim of lack of access to the courts will be sustained"]; Hause v. Vaught, 993 F.2d 1079, 1084-1085 (4th Cir. 1993); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) [Dismissal of access to court claim proper where inmate relied on conclusory allegations and failed to identify any actual injury]. Sowell v. Vose, 941 F. 2d 32 (1st Cir. 1991), is illustrative. A prisoner had complained that his legal materials were seized in prison, which resulted in his failure to file a timely notice of appeal. However, the record showed that the seizure occurred in February and the legal default in March. Not convinced by mere temporal proximity, the Court demanded more than a speculative connection between the two events: "If a causal relationship existed between the removal of the property and the dismissal of the state court appeal, Sowell could and should have articulated its basis...." 941 F. 2d at 35. The same is true here. Plaintiff has set forth no basis for a claim of injury based on a denial of access to the courts in his filings. To the contrary , his own filings serve to defeat his claim.

Finally, at the conclusion of his Amended Complaint, Plaintiff requests permanent injunctive relief in addition to his requested monetary damages. However, injunctive relief is not available under the FTCA; see Estate of Trentadue v. United States, 397 F.3d 840, 863 (10th Cir. 2005) ["[T]he District Court lack[s] subject matter jurisdiction under the FTCA to provide injunctive and declaratory relief"]; see also 28 U.S.C. § 1346(b); and to the extent Plaintiff seeks a permanent

---

may only seek to enforce his own rights.].



10

injunction under <u>Bivens</u>, this claim also fails. <u>Roe v. Operation Rescue</u>, 919 F. 2d 857, 864 (3rd Cir. 1990) ["to establish a present case or controversy in an action for injunctive relief, a plaintiff must show that he or she is likely to suffer future injury from [the] defendant's threatened illegal conduct"].

## **CONCLUSION**

Based on the foregoing, it is recommended that the within action be dismissed without prejudice and without issuance and service of process. It is also recommended that this dismissal should be deemed a "strike" under the "three strikes" rule of 28 U.S.C. 1915(g).

The Plaintiff's attention is directed to the Notice on the following page.

Respectfully Submitted,

Bristow Marchant
United States Magistrate Judge

February 21, 2006

Columbia, South Carolina



**Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
& The Serious Consequences of a Failure to Do So**

The petitioner is hereby notified that any objections to the attached Report and Recommendation must be filed within **ten (10) days** of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** See Keeler v. Pea, 782 F. Supp. 42, 43-44 (D.S.C. 1992). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), cert. denied, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), cert. denied, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

Accord Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

**This notice apprises the petitioner of the consequences of a failure to file specific, written objections.** See Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201**

